UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEATHER SHAFFER,

                      *Plaintiff*,

    v.

CAROLYN KAVARNOS,

                      *Defendant*.

No. 23-CV-10059 (KMK)

ORDER & OPINION

Appearances:

Jonathan Phillips, Esq.
John Bathke, Esq.
Phillips & Bathke, P.C.
Peoria Heights, IL
*Counsel for Plaintiff*

Mark Matri, Esq.
McCann & Matri
Ridgefield Park, NJ
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Heather Shaffer ("Plaintiff") brings this Action against Carolyn Kavarnos ("Defendant") alleging that Defendant did not consider fair use when issuing takedown notices against Plaintiff's videos and therefore is liable for damages under 17 U.S.C. § 512(f). (*See generally* Compl. (Dkt. No. 1).) Plaintiff initiated this Action on November 15, 2023. (*See* Compl.) On July 7, 2025, the Court held a bench trial on the merits. (*See* Dkt., minute entry dated July 7, 2025.) There were two witnesses, Plaintiff and Defendant. The Court received documentary and video exhibits into evidence.

This Order and Opinion constitutes the Court's findings of fact and conclusions of law for purposes of Federal Rule of Civil Procedure 52(a)(1).  To the extent any statement labeled as a finding of fact is a conclusion of law, it shall be deemed a conclusion of law, and vice versa.

I. Findings of Fact and Conclusions of Law

Plaintiff, a resident of Tennessee, operates a YouTube channel called "Hell to the No." (Dkt. No. 85 ¶¶ 1, 4.)  Defendant, a resident of New York, operates a YouTube channel called "MommyRamblingsBlog."  (*Id.* ¶¶ 2–3.)  Defendant posts videos to her channel that focus on "true crime coverage and commentary," "live trials, shopping, do it yourself projects, home improvement, and craft tutorials."  (Dkt. No. 84 ¶¶ 2–3.)  Plaintiff posts videos to raise "awareness in the communities concerning a few [YouTube] creators" who would "dox[,] threaten and harass, show outlandish behavior."  (Trial Tr. at 50:12–51:3.)[1]

Between September 2020 and October 2022, Defendant made multiple Internet searches about copyright law, takedown notices, fair use, and YouTube policies concerning the same.  (*See generally* Pl. Exs. 2, 31–33.)  In March 2022, Defendant submitted to YouTube takedown notices pursuant to the Digital Millennium Copyright Act ("DMCA") against seven of Plaintiff's videos.  (*See* Pl. Ex. 37.)  Defendant asserted in the notices that Plaintiff's videos used significant portions of Defendant's own videos without permission.  (*See* Pl. Exs. 6–21.)  In response, Plaintiff retained an attorney and submitted a DMCA counter notification asserting that

---

[1] Doxing, also spelled "doxxing," "involves 'using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online'" for the purposes of "'retribution, harassment[,] or humiliation.'"  *Greer v. Carlson*, No. 20-CV-5484, 2020 WL 6064167, at *2 n.5 (S.D.N.Y. Oct. 14, 2020) (quoting *Vangheluwe v. Got News, LLC*, 265 F. Supp. 3d 850, 858 (E.D. Mich. 2019)); *see also Dox*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/dox [https://perma.cc/P5H4-TRWN] (last visited August 7, 2025) ("[T]o publicly identify or publish information about (someone) especially as a form of punishment or revenge[.]").

Plaintiff's use of Defendant's videos constituted fair use.  (*See* Pl. Ex. 38.)  In September 2022, Defendant again submitted DMCA takedown notices, this time against five of Plaintiff's videos. (*See* Pl. Ex. 41.)  Plaintiff again retained an attorney and submitted a DMCA counter notification, again asserting that her use of Defendant's videos constituted fair use.  (*See* Trial Tr. at 58:23–59:21.)

## II.  Conclusions of Law

The DMCA provides that service providers like YouTube may avoid copyright infringement liability for storing or hosting content if the service provider removes or disables access to the content after receiving a takedown notice from the copyright holder that the content is infringing.  *See* 17 U.S.C. § 512(c).  A takedown notice must contain a signature of the copyright holder, identification of the copyrighted work claimed to have been infringed, identification of the material that is claimed to be infringing and is to be removed, the complaining party's contact information, "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," and a statement that the information in the notification is accurate.  *Id.* § 512(c)(3)(A)(i)–(vi).  The DMCA also provides that the owner of the allegedly infringing material may issue a counter notice that includes "[a] statement under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled."  17 U.S.C. § 512(g)(3)(C).  Section 512(f) of the DMCA provides that:

> [a]ny person who knowingly materially misrepresents under this section—(1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for damages, including costs and attorneys' fees, incurred by the alleged infringer, [or] by any copyright owner.

17 U.S.C. § 512(f).

In *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016), the Ninth Circuit held that "if a copyright holder ignores or neglects our unequivocal holding that it must consider fair use before sending a takedown notification, it is liable for damages under [Section] 512(f)." *Id.* at 1154. *Lenz* has been cited by five Southern District of New York courts, three of which dealt with Section 512(f). *See Hughes v. Benjamin*, 437 F. Supp. 3d 382, 394–95 (S.D.N.Y. 2020) (dismissing a Section 512(f) claim because the pleading did not plausibly allege that defendant made misrepresentations in a counternotification); *Stern v. Lavender*, 319 F. Supp. 3d 650, 683–84 (S.D.N.Y 2018) (granting summary judgment and dismissing a Section 512(f) counterclaim where the evidence "uniformly support[ed]" that the party issuing the takedown notice had a subjective good faith belief that the use of the copyrighted work was not authorized); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47 (S.D.N.Y. 2017) (dismissing a Section 512(f) claim at summary judgment because "defendants clearly had a subjective 'good faith belief' that their video did not infringe plaintiff's copyrights" and "[i]t is undisputed that defendants understand the concept of fair use and have an established practice for ensuring their videos make fair use of copyrighted material").[2] However, "a copyright holder is not liable for misrepresentation under the DMCA if they subjectively believe the identified material infringes their copyright, even if that belief is ultimate mistaken." *Hosseinzadeh*, 276 F. Supp. 3d at 44 (citing *Lenz*, 815 F.3d at 1153, and *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004)); *see also Stern*, 319 F. Supp. 3d at 683 ("[I]t is a complete defense to a

---

[2] The two other cases do not concern Section 512(f). *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 519 (S.D.N.Y. 2022) (noting that a complaining party is required to evaluate fair use before sending a takedown notice to YouTube); *Lombardo v. Dr. Seuss Enters., L.P.*, No. 16-CV-9974, 2017 WL 1378413, at *6 (S.D.N.Y. Apr. 7, 2017) (noting that plaintiff had cited *Lenz* but that the case was inapposite).

claim under [Section] 512(c) that the party issuing a takedown notice had a subjective good faith belief that the use in question was 'not authorized.'" (citation omitted)).

Accordingly, Section 512(f) establishes a high bar to liability—without direct evidence that establishes the state of mind of the party issuing the takedown notice at the time of issuance, a successful plaintiff will likely have to stack inference upon inference derived from circumstantial evidence to reach a preponderance as to defendant's state of mind. The record evidence before the Court comes very close to establishing that, at the very least, Plaintiff has met her burden as to the five takedown notices issued in September 2022. However, the Court finds that the evidence falls just short of establishing by a preponderance that Defendant did not consider fair use when issuing twelve takedown notices in March and September 2022.

Plaintiff argues that Defendant has a practice or policy of automatically issuing takedown notices of videos that contain any portion of Defendant's videos. (*See* Pl's Mem. (Dkt. No. 93) 12.) Specifically, Plaintiff points to an October 2, 2023, video in which Defendant states "I told you and you've been told that if you put my intellectual property, my video, into your video, any amounts of it, I will strike it." (Pl's Mem., Ex. 1-1; *see also* Pl. Ex. 35.) The Court agrees that this language suggests that Defendant would be quick to issue a takedown notice to any video that contains any amount of Defendant's copyrighted material, i.e., without considering fair use. Nevertheless, the video does not bear the weight that Plaintiff places upon it. The video postdates the takedown notices at issue here by over a year, thereby limiting the extent to which the video speaks to Plaintiff's state of mind or a policy and practice of automatically striking videos in March and September 2022, when she issued the takedown notices. The video also does not establish that Defendant struck videos because she was ignorant of fair use or otherwise would refuse to consider fair use before issuing the takedown. Indeed, Defendant's Internet

search history and the webpages she viewed from at least September 2020 discussing fair use suggest that Defendant was at least aware of the concept of fair use at the time she issued the takedown notices.  (*See* Pl. Ex. 2.)

Plaintiff also asserts that Defendant acted with willful blindness.  (*See* Pl's Mem. 13.)  The Second Circuit has held that "the willful blindness doctrine may be applied, in appropriate circumstances, to demonstrate knowledge or awareness of specific instances of infringement under the DMCA."  *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012).  The doctrine "requires proof that (1) the defendant subjectively believe[d] that there is a high probability that a fact exists, and (2) he/she must have taken deliberate action to avoid learning of that fact."  *State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 667 (S.D.N.Y. 2017) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011), and *United States v. Svoboda*, 347 F.3d 471, 477–78 (2d Cir. 2003)), *aff'd*, 942 F.3d 554 (2d Cir. 2019).  Here, the Court finds that Plaintiff has not met her burden of showing that Defendant took deliberate action to avoid learning of fair use.  In fact, Defendant's Internet search history indicates the opposite, that she took deliberate action to learn about fair use before issuing the takedown notices.  (*See generally* Pl. Ex. 2.)

Plaintiff argues that Defendant struck the videos "because of 'bullying' [and] not because they infringed the copyrights in [Defendant's] works."  (Pl's Mem. 6.)  It is true that some of Defendant's takedown notices mention bullying.  (*See* Pl. Ex. 7 ("[Hell to the No] stole [Defendant's video] without permission and is using it to bully my minor children . . . ."); Pl. Ex. 16 ("This is my exclusive art video with my work . . . they sped up my video but it is my content and used to mock and harass me and my family[.]"); Pl. Ex. 18 ("[Hell to the No] [has] no permission to use this [video] and [is] stalking me[.]"); Pl. Ex. 19 ("[Hell to the No] stole

[Defendant's video] and is using [it] without permission to view and mock our private event."); Pl. Ex. 21 ("I am the creator, this is . . . my exclusive content that they are using without permission and they are harassing me with this stolen content.").) Further, the takedown notices issued before and after receiving the March 2022 counter notice are strikingly similar. (*Compare* Pl's Ex. 6 (notice dated March 24, 2022, stating "It is me in the video and I created the video and it is my original video that they do not have permission to use"), *with* Pl's Ex. 7 (notice dated September 3, 2022, stating "This is my video of my family at a water park that this channel stole without permission and is using it to bully my minor children this is me and my family").) One possible inference from this evidence is that Defendant's process in issuing takedown notices was unchanged by receipt of the March 2022 counter notice. However, Plaintiff overlooks the fact that Defendant repeatedly cites intellectual property *and* non-intellectual property reasons for striking the offending videos. (*See, e.g.*, Pl's Ex. 6 ("I created the video and it is my original video that they do not have permission to use[.]").) At bottom, however, this circumstantial evidence requires the Court to draw too many inferences solely in Plaintiff's favor. There is no reason to think, and Plaintiff offers no support for the proposition, that the inclusion of non-intellectual property reasons for striking a video renders the invocation of intellectual property reasons less believable or irrelevant. Similarly, that Defendant was consistent in her reasons for issuing takedown notices does not establish that she did not consider fair use before so issuing.

    Plaintiff asserts that the fact that Defendant did not sue Plaintiff for infringement "should be seen as a strong suggestion that she was using the DMCA for purposes other than protecting her intellectual property." (Pl's Mem. 16.) Plaintiff cites in support *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004), which held:

> The fact that [defendant] never actually brought suit against any alleged infringer suggests strongly that [defendant] sought to use the DMCA's safe harbor

provisions—which were designed to protect ISPs, not copyright holders—as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property.

*Id.* at 1204–05. The Court agrees that Defendant's failure to sue Plaintiff for infringement weighs against Defendant. This is further supported by Defendant's repeated reference to Plaintiff's videos "mocking" Defendant and her family. (*See* Pl. Exs. 16, 19.) Defendant's counterargument that "tak[ing] someone to court for copyright is expensive, time consuming, [and] stressful" appeals to common sense. (Trial Tr. at 146:17–21.) The extent to which it fully explains Defendant's choice not to bring such a lawsuit is open to question, especially in light of the Court's view that neither Defendant nor Plaintiff was a fully credible witness.

Finally, Plaintiff argues that the proffered reasons within the takedown notices indicate that Defendant did not consider fair use because the notices do not include a discussion of the elements of fair use.[3] Plaintiff is correct that Defendant's takedown notices, even generously construed, do not list the elements of fair use, but this is not strong proof of Defendant's state of mind because "[t]he 'absence of evidence is not evidence of absence.'" *In re Bystolic Antitrust*

---

[3] Section 107 of the Copyright Act provides the statutory framework for fair use:

In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.
 "The first fair use factor focuses primarily on the extent to which the secondary use is transformative; that is, whether the new work merely supplants the original, 'or instead adds something new, with a further purpose or different character, altering the [original] with new expression, meaning, or message.'" *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 179 (2d Cir. 2024) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).

*Litig.*, 657 F. Supp. 3d 337, 355 (S.D.N.Y. 2023) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig. -MDL No. 1869*, 725 F.3d 224, 254 (D.C. Cir. 2013)), *aff'd sub nom. Watson Lab'ys, Inc. v. Forest Laby's, Inc.*, 101 F.4th 223 (2d Cir. 2024); *cf. Sarah B. W. v. Kijakazi*, No. 21-CV-50, 2022 WL 16734988, at *10 (N.D.N.Y. Nov. 7, 2022) ("[T]he absence of evidence that Plaintiff was not actively presenting certain emotions in a specific setting is not evidence of the absence of a disabling mental health impairment."). Plaintiff also argues that Defendant could not have considered fair use because, if she had, she would not have struck Plaintiff's videos that only included between six and 30 seconds of Defendant's videos. (*See* Pl's Mem. 4–5.) To Plaintiff, such usage is "plainly fair use." (*Id.* 18.) But this argument overlooks the fact that Defendant need not have formed an objectively reasonable belief that Plaintiff's videos infringed Defendant's copyright; rather, she need only have had a "subjective[] belie[f] [that] the identified material infringes [her] copyright." *Hosseinzadeh*, 276 F. Supp. 3d at 44.

At bottom, the Court finds that the totality of the record evidence does not establish by a preponderance of the evidence that Defendant did not consider fair use when submitting takedown notices in March and September 2022. To be sure, this is a close case, but Plaintiff is the party with the burden here and she did not quite meet it.

## II.  Conclusion

For the reasons set forth above, Plaintiff's claims are dismissed. The Clerk of Court is respectfully directed to enter judgment and to close the case.

SO ORDERED.

Dated:   August 7, 2025
         White Plains, New York

KENNETH M. KARAS
United States District Judge

9