UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEATHER SHAFFER,

*Plaintiff*,

v.

CAROLYN KAVARNOS,

*Defendant*.

Case No. 23-CV-10059 (KMK)

ORDER & OPINION

Appearances:

Jonathan L.A. Phillips, Esq.
Jonathan LA Phillips
Peoria Heights, IL
*Counsel for Plaintiff*

John T.D. Bathke, Esq.
Phillips & Bathke, P.C.
Peoria Heights, IL
*Counsel for Plaintiff*

Mark T. Matri
McCann & Matri
Ridgefield Park, NJ
Counsel for *Defendant*

KENNETH M. KARAS, United States District Judge:

Heather Shaffer ("Plaintiff") brought this Action against Carolyn Kavarnos ("Defendant"), alleging Defendant is liable for damages under 17 U.S.C. § 512(f) because she did consider fair use in issuing takedown notices against Plaintiff's videos. (*See generally* Compl. (Dkt. No. 1).) Plaintiff initiated this Action on November 15, 2023, (*see generally* Dkt.), and on July 7, 2025, the Court held a bench trial on the merits, (*id.* (minute entry dated July 7, 2025)). On August 7, 2025, the Court found that Plaintiff had not established by a preponderance of the evidence that Defendant did not consider fair use when submitting

takedown notices in March and September 2022 and entered judgement for Defendant. *Shaffer v. Kavarnos*, No. 23-CV-10059, 2025 WL 2299173, at *5 (S.D.N.Y. Aug. 7, 2025). Defendant now moves for attorneys' fees and costs pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d)(2). (*See* Mot. for Atty's Fees (Dkt. No. 104).) For the reasons set forth below, Defendant's request is denied.

## I. Background

### A. Factual Background

Plaintiff, a resident of Tennessee, operates a YouTube channel called "Hell to the No." *Shaffer*, 2025 WL 2299173, at *1. Defendant, a resident of New York, operates a YouTube channel called "MommyRamblingsBlog." *Id.* In March 2022, Defendant "made multiple Internet searches about copyright law, takedown notices, fair use, and YouTube policies concerning the same" and submitted to YouTube takedown notices against seven of Plaintiff's videos under the Digital Millennium Copyright Act ("DMCA"). *Id.* In the notices, Defendant claimed that Plaintiff's videos used significant portions of Defendant's own videos without permission. *Id.* In response, Plaintiff retained an attorney and submitted a DMCA counter-notification, arguing her use of Defendant's videos constituted fair use. *Id.* In September 2022, Defendant submitted additional DMCA takedown notices against five of Plaintiff's videos. *Id.* Once again, Plaintiff retained an attorney and submitted a DMCA counter-notification, claiming her use of Defendant's videos constituted fair use. *Id.*

### B. Procedural Background

Plaintiff initiated this Action on November 15, 2023. In her Complaint, Plaintiff alleged that Defendant did not consider fair use when issuing takedown notices against Plaintiff's videos and was therefore liable for damages under 17 U.S.C. § 512(f). *Id.* On December 11, 2023,

Defendant answered Plaintiff's Complaint. (*See generally* Answer (Dkt. No. 12).) The Parties proceeded through discovery. (*See generally* Dkt.) On January 16, 2025, the Court held a status conference and set a schedule for the Parties to submit a proposed pre-trial order. (*See* Dkt. (minute entry for Jan. 16, 2025).) On February 18, 2025, the Parties submitted their proposed pre-trial order, proposed jury instructions, proposed voir dire questions, and motions in limine. (*See* Proposed Pre-Trial Order (Dkt. No. 48); Proposed Jury Instructions (Dkt. No. 49); Proposed Voir Dire Questions (Dkt. No. 50); Notice of Pl.'s Proposed Verdict Sheet (Dkt. No. 51); Mot. in Limine (Dkt. No 52); Mot. in Limine (Dkt. No. 53).)

On April 8, 2025, Plaintiff filed a pre-motion letter requesting leave to file a Motion for Protective Order and Sanctions. (*See* Letter from Jonathan Phillips, Esq. to Court (Apr. 8, 2025) (Dkt. No. 54).) In it, Plaintiff informed the Court that Defendant was seeking to depose Plaintiff despite fact discovery having closed in May 2024. (*Id.*) In response, Defendant submitted a letter explaining that she had not asked to depose Plaintiff earlier in an effort to reduce costs, but she now needed to depose Plaintiff because settlement negotiations were fruitless and trial was imminent. (*See generally* Letter from Mark Matri, Esq. to Court (Apr. 17, 2025) (Dkt. No. 56).) At the pre-motion conference on April 23, 2025, the Court set a briefing schedule. (*See* Dkt. (minute entry for Apr. 23, 2025).) On April 25, 2025, Defendant submitted a letter motion requesting leave to file a Motion for Judgment on the Pleadings. (*See* Letter from Mark Matri, Esq. to Court (Apr. 25, 2025).) Plaintiff filed her Motion for a Protective Order and Motion for Sanctions on April 29, 2025. (*See* Mot. for Protective Order & Mot. for Sanctions (Dkt. No. 58); Mem. of Law in Supp. of Mot. (Dkt. No. 59).) On April 30, 2025, Plaintiff filed a letter in opposition to Defendant's request to file a Motion for Judgment on the Pleadings or a Motion for Summary Judgment. (*See* Letter from Johnathan Phillips, Esq. to Court (Apr. 30, 2025) (Dkt.

No. 60).) On May 5, 2025, the Court denied Defendant's request to file a motion for judgment on the pleadings as untimely because it would delay the already-scheduled trial. (*See* Order 2 (Dkt. No. 61).) The Court also denied Defendant's request to file a motion for summary judgment because the Court had previously granted Defendant leave to file this motion, but she had not done so timely. (*Id.*)

On May 6, 2025, the Court adopted a trial schedule for this Action. (*See generally* Scheduling Order (Dkt. No. 62).) On May 27, 2025, despite lacking the Court's permission, Defendant filed her Motion for Judgment on the Pleadings ("Motion"). (*See* Def.'s Mot. for J. on the Pleadings (Dkt. No. 64).) On June 19, 2025, Plaintiff filed her Opposition. (*See* Pl.'s Mem. of Law in Opp'n (Dkt. No. 67).) One June 24, 2025, the Court denied Defendant's Motion because she had ignored the Court's previous denial of her request to file the Motion as untimely. (*See* Order (Dkt. No. 75).) On June 27, 2025, Defendant renewed her request to file a Motion for Judgment on the Pleadings, (*see* Letter from Mark Matri, Esq. to Court (June 27, 2025) (Dkt. No. 79)), which the Court also denied as untimely, (*see* Order (Dkt. No. 80)).

The Action proceeded to a bench trial on July 7, 2025. (*See* Dkt. (minute entry for July 7, 2025).) On July 14, 2025, the Parties filed their Post-Trial Memoranda. (*See* Def.'s Post-Trial Mem. (Dkt. No. 93); Pl.'s Post-Trial Mem. (Dkt. No. 94).) On July 30, 2025, the Court held oral argument on the Parties' Post-Trial Memoranda. (*See* Dkt. (minute entry for July 30, 2025).) On August 7, 2025, the Court issued its Order & Opinion, which found "that the totality of the record evidence does not establish by a preponderance of the evidence that Defendant did not consider fair use when submitting her takedown notices in March and September 2022[,]" and entered judgement for Defendant. *Schaffer*, 2025 WL 2299173, at *5.

On August 20, 2025, Defendant filed a pre-motion letter requesting leave to file a motion for attorney's fees, (*see* Letter from Mark Matri, Esq. (Aug. 20, 2025) (Dkt. No. 100)), to which Plaintiff responded, (*see* Letter from Jonathan Phillips, Esq. (Aug. 20, 2025) (Dkt. No. 101)). Defendant renewed her request to file a motion for attorney's fees on October 7, 2025, (*see* Letter from Mark Matri, Esq. to Court (Oct. 7, 2025) (Dkt. No. 102)), which the Court granted, (*see* Order (Dkt. No. 103)). Defendant filed her Motion for Attorney's Fees on November 7, 2025. (*See* Mot. for Att'y's Fees (Dkt. No. 104); Suppl. Mem. in Supp. ("Def.'s Mem.") (Dkt. No. 104-1).) On December 8, 2025, Plaintiff filed her Opposition. (*See* Mem. of Law in Opp'n ("Pl.'s Opp.") (Dkt. No. 105).) On December 22, 2025, Defendant filed her Reply. (*See* Reply to Response to Mot. ("Def.'s Reply") (Dkt. No. 106).)

## II. Discussion

### A. Standard of Review

At the outset, the Court must determine which standard of review is applicable. While Defendant moves for attorney's fees under 17 U.S.C. § 505 ("Section 505"), (*see generally* Def.'s Mem.), Plaintiff counters that Section 505 is inapplicable because 17 U.S.C. § 512 ("Section 512"), the section under which she brought her claim, has its own fee-shifting regime, which only applies to prevailing plaintiffs, (*see* Pl.'s Opp. 3–4).

Sections 505 and 512 are part of the DMCA, which amended the Copyright Act of 1976 (the "Act"). Section 512(f) authorizes an award of "damages, including costs and attorneys' fees," to plaintiffs who bring successful misrepresentation claims under the Act. 17 U.S.C. § 512(f). Section 505 is broader, providing for the award of reasonable attorney's fees to the prevailing party "[i]n any civil action under this title . . . [e]xcept as otherwise provided by [the Act]." 17 U.S.C. § 505. Plaintiff argues that Section 512(f)'s award provision precludes the

Court from awarding Defendant attorney's fees under Section 505, (Pl.'s Opp. 3–5), but at least one court has granted attorney's fees under Section 505 to a defendant that prevailed on a Section 512(f) claim. *See Digital Marketing Advisors v. McCandless Grp., LLC*, No. 21-CV-6888, 2022 WL 1740367, at *2 (C.D. Cal. Oct. 27, 2022) (granting fees to the prevailing defendant under Section 505 where the plaintiff did not argue that only Section 512 applied). The Court's review of the relevant case law also produced no cases in which a court denied a prevailing defendant's Section 505 motion for attorney's fees on the ground that such an award is precluded by Section 512(f). Thus, the Court will evaluate Defendant's request under Section 505.

Section 505 provides a remedy for copyright infringement actions in the form of costs or attorney's fees. (See 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs . . . . Except as otherwise provided by this title, the court *may also* award a reasonable attorney's fee to the prevailing party as part of the costs." (emphasis added)). "The two key aspects of this grant of authority are as follows: (1) a fee award is limited to a prevailing party; and (2) a fee award is not mandatory, so whether to make such an award lies within the sound discretion of the court." *Shaw Fam. Archives Ltd. v. CMG Worldwide, Inc.*, 589 F. Supp. 2d 331, 349 (S.D.N.Y. 2008). Thus, the Court must first determine whether Defendant qualifies as a "prevailing party" within the meaning of Section 505. If not, any additional inquiry is unnecessary.

"Logic and the parity of treatment between prevailing plaintiffs and defendants mandated by the Supreme Court . . . dictates that [D]efendant[] should be considered [a] prevailing part[y] when [it] successfully defend[s] against the significant claims actually litigated in the action. Under this standard, . . . [D]efendant[] here [is] a 'prevailing party' for purposes of [§] 505."

*Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 50 (S.D.N.Y. 1994) (citation omitted). Therefore, the Court asks whether, as a prevailing party, Defendant ought to be awarded attorney's fees and/or costs within the Court's discretion.

The Supreme Court has made clear that "attorney's fees are to be awarded to prevailing parties *only* as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (emphasis added). Thus, post-*Fogerty*, it is no longer the case that attorney's fees are "awarded as 'a matter of course.'" *Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*, No. 16-CV-7030, 2019 WL 4686498, at *1 (S.D.N.Y. Sept. 26, 2019) (quoting *Fogerty*, 510 U.S. at 533); *see also Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634, 2018 WL 357298, at *1 (S.D.N.Y. Jan. 10, 2018) (explaining that *Fogerty* abrogated the notion that attorney's fees and costs were typically awarded); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 39–40 (S.D.N.Y. 2015) ("Fee awards, however, are not 'automatic' or given 'as a matter of course.'" (quoting *Fogerty*, 510 U.S. at 533)).

"[F]ee awards under [Section] 505 should encourage the types of lawsuits that promote" the purposes of the Copyright Act—to "enrich[] the general public through access to creative works." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016). The Copyright Act "achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work." *Id.*; *see also TCA Television Corp. v. McCollum,* No. 15-CV-4325, 2017 WL 2418751, at *9 (S.D.N.Y. June 5, 2017) (noting that Section 505 awards "should encourage the types of lawsuits to promote the Copyright Act's aims of encouraging and rewarding authors' creations while also enabling others to build on that work." (citation and quotation marks omitted)), *report and recommendation adopted*, 2018 WL 2932724 (S.D.N.Y. June 12, 2018). In a copyright action, "[w]hen

determining whether to award attorney[']s fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citing *Fogerty*, 510 U.S. at 534 n.19). "The third factor—objective unreasonableness—should be given substantial weight." *Id.* (citing *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001)).

B. Analysis

1. Frivolousness and Objective Reasonableness

Defendant asserts that Plaintiff's claim was objectively unreasonable because the evidence at trial "confirmed that Defendant reviewed each allegedly infringing video, considered the fair use factors, and submitted takedown notices in good faith" and "Plaintiff failed to offer any credible evidence" showing Defendant "knew her statements were false or acted with reckless disregard" of their truthfulness. (Def.'s Mem. 6.) According to Defendant, Plaintiff's decision to proceed to trial after Defendant "identified these deficiencies" in her (unsanctioned) Motion for Judgment on the Pleadings "underscore[es] the objective unreasonableness of her position." (*Id.*) Defendant also argues that Plaintiff's claim was also frivolous because it "rested on speculation and conclusory assertions that Defendant had acted with 'actual knowledge' of falsity" but Plaintiff failed to identify a false statement in any of the twelve DMCA notices at issue and failed to provide evidence that Defendant lacked a good-faith belief in Plaintiff's alleged infringement when issuing the notices. (*Id.* at 7.)

Though "[o]bjective unreasonableness is not the same as frivolousness . . . [t]he line separating them is not . . . well-defined." *TCA Television Corp.*, 2017 WL 2418751, at *14

(citation omitted); *see also Agence France Presse v. Morel*, No. 10-CV-2730, 2015 WL 13021413, at *5 (S.D.N.Y. March 23, 2015) (noting that objective unreasonableness and frivolousness are not necessarily "coextensive")), *aff'd sub nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016). For that reason, the first and third factors are often evaluated together. *See, e.g.*, *Boesen v. United Sports Publ'ns, Ltd.*, No. 20-CV-1552, 2021 WL 1145730, at *3 (E.D.N.Y. Mar. 25, 2021) ("The test for frivolousness largely duplicates that of objective unreasonableness."), *aff'd* 2022 WL 457281 (2d Cir. Feb. 15, 2022); *TCA Television*, 2017 WL 2418751, at *14 (evaluating the first and third factors simultaneously). If a principled distinction between the two were to be made, it is that "frivolousness is a particularly intense form of objective unreasonableness." *TCA Television*, 2017 WL 2418751, at *14 (citing *CK Co. v. Burger King Corp.*, No. 92-CV-1488, 1995 WL 29488, at *1 (S.D.N.Y. Jan. 26, 1995)). Under this interpretation, if an argument is not objectively unreasonably, it cannot be frivolous. Thus, the Court first asks whether Plaintiff's claim was objectively unreasonable.

"That a defendant prevailed in the litigation . . . 'does not necessarily mean that the plaintiff's position was frivolous or objectively unreasonable.'" *TVT Recs., Inc. v. Island Def Jam Music Grp.*, 446 F. Supp. 2d 235, 238 (S.D.N.Y. 2006) (quoting *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96-CV-4126, 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)); *see also Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, No. 10-CV-4919, 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013) ("[L]ack of success on the merits, without more, does not establish that the non-prevailing party's position was objectively unreasonable."); *CK Co.*, 1995 WL 29488, at *1 ("While [the] plaintiff failed to sustain its position, not all unsuccessful litigated claims are objectively unreasonable."). "To hold otherwise would establish a per se entitlement to attorney's fees whenever [issues pertaining to

judgment] are resolved against a copyright plaintiff." *CK Co.*, 1995 WL 29488, at *1 (italics omitted).

"A lawsuit or litigation position is objectively reasonable if it has 'a reasonable basis in law and fact.'" *Otto v. Hearst Comm'ns, Inc.*, No. 17-CV-4712, 2020 WL 377479, at *2–3 (S.D.N.Y. Jan. 23, 2020) (quoting *Zalewski v. Cicero Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014)). Here, Plaintiff's claim was firmly rooted in law, as Section 512(f) is a well-recognized basis for bringing a claim. *See, e.g.*, *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 394–95 (S.D.N.Y. 2020) (discussing the plaintiff's Section 512(f) copyright misrepresentation claim); *Stern v. Lavender*, 319 F. Supp. 650, 683–84 (S.D.N.Y. 2018) (same). Additionally, the Court found that the trial evidence came "very close to establishing that . . . Plaintiff ha[d] met her burden" on at least some of the challenged takedown notices, and it was ultimately "a close case." *Shaffer*, 2025 WL 2299173, at *2, 5. Based on this record, it is clear that Plaintiff's arguments were neither "entirely frivolous" nor "severely defective." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 379 (S.D.N.Y. 2019), *aff'd* 970 F. Supp. 167 (2d Cir. 2020); *see also* *Levitin v. Sony Music Ent.*, No. 14-CV-4461, 2015 WL 5577565, at *1 (S.D.N.Y. Sept. 22, 2015) (finding the plaintiffs' claim was not objectively unreasonable because "the case was, in fact, a close call" and declining to award attorney's fees). In sum, "[t]hough Plaintiff was unsuccessful in this litigation, [her] filing of the case and subsequent arguments were not objectively unreasonable." *Yang v. Mic Network, Inc.*, No. 18-CV-7628, 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020); *see also Dominick R. Pilla, Architecture-Eng'g P.C. v. Gilat*, No. 19-CV-2255, 2022 WL 1003852, at *28 (S.D.N.Y. Mar. 29, 2022) (same).

2. Plaintiff's Motivation

"The presence of improper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees." *Ariel (UK) Ltd. v. Reuters Grp. PLC*, No. 05-CV-9646, 2007 WL 194683, at *4 (S.D.N.Y. Jan. 24, 2007) (citing *Matthew Bender*, 240 F.3d at 125–27). Defendant contends that Plaintiff brought this Action as retaliation for Defendant's takedown notices and that Plaintiff lacked any credible evidence to support her claim. (Def.'s Mem. 8–9.) Plaintiff counters that she brought this Action to vindicate what she believed to be her fair use of Defendant's videos' content. (Pl.'s Opp. 9–10.)

Although Plaintiff did not ultimately prevail, the Court found that Plaintiff offered "circumstantial evidence" to support her claim, including a video in which Defendant threatened to "strike" any video that incorporated her content. *Shaffer*, 2025 WL 2299173, at *3. Despite Defendant's self-serving assertion that "[t]he record supports a finding that [Plaintiff's] claim was retaliatory in nature," (Def.'s Mem. 8), Defendant points to no specific evidence of such conduct. As to Defendant's contention that Plaintiff's "litigation conduct" including "discovery disputes, duplicative filings, and the eleventh-hour withdrawal of her jury demand" are indications of Plaintiff's retaliatory motivation, (*id.* at 9), this Action's docket clearly shows that Defendant's counsel was far more culpable of obstructionist conduct, (*see, e.g.*, Letter from Jonathan Phillips, Esq. to Court (Mar. 15, 2024) (Dkt. No. 20) (informing the Court that Defendant had not responded to Plaintiff's discovery requests); Dkt. (minute entry Apr. 8, 2024) (noting that Defendant had "disregard[ed] . . . the Court-ordered response deadline" for Plaintiff's discovery requests); Dkt. (minute entry for May 5, 2025) (denying Defendant's request to file a motion for judgment on the pleadings or motion for summary judgment as untimely); Order (Dkt. No. 75) (denying Defendant's Motion for Judgment on the Pleadings,

which the Court had previously denied leave to file because it would be untimely); Order (Dkt. No. 79) (denying Defendant's third attempt to file her Motion for Judgment on the Pleadings as untimely).)

3. Deterrence

Lastly, the Court concludes that awarding attorney's fees to Defendant will not deter future copyright violations by Plaintiff or any third party. Plaintiff brought a single claim against Defendant under Section 512(f), and nothing in the record indicates that she will file similar claims in the future. Although Defendant argues a fee award is necessary to "deter the misuse of [Section] 512(f) claims[,]" (Def.'s Mem. 9), the cost of filing and prosecuting a claim already disincentivizes meritless litigation, especially when Section 512(f)'s fee-shifting provision only allows victorious plaintiffs to recover attorney's fees and costs.

Additionally, although Defendant again argues that "Plaintiff's conduct throughout the litigation . . . imposed avoidable costs on Defendant and the Court[,]" (Def.'s Mem. 10), as detailed above, Defendant's counsel's conduct was far from exemplary, especially in repeatedly filing motions that the Court had denied leave to file because they would be untimely. To the extent Defendant's legal fees have been exacerbated by the course of this litigation, Defendant's counsel's conduct is largely to blame.

III. Conclusion

For the reasons set forth above, Defendant's Motion is denied. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 104.

SO ORDERED.

Dated: July 8, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge